AARON M. CLEFTON, Esq.  (SBN 318680)
PAUL L. REIN, Esq. (SBN 43053)
REIN & CLEFTON, Attorneys at Law
1423 Broadway #1133
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:   510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiffs
JORGE SANCHEZ and MATT SCOTT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE SANCHEZ AND MATT SCOTT,<br><br>   Plaintiffs,<br><br>v.<br><br>NORTH BEACH ALLIANCE, LLC dba BARBAROSSA LOUNGE; SHANNON C. GWIN,<br><br>   Defendants. | CASE NO.<br>Civil Rights<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1. **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>2. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>3. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

   Plaintiffs JORGE SANCHEZ and MATT SCOTT complain of Defendants NORTH BEACH ALLIANCE, LLC dba BARBAROSSA LOUNGE and SHANNON C. GWIN, and each of them, and alleges as follows:

   1.     **INTRODUCTION:**  Barbarossa Lounge is a bar and restaurant that hosts hundreds of members of the public at a time for drinks and food.  Unfortunately, Barbarossa Lounge also does not have an accessible path of travel to their restrooms, despite a multi-hundred-thousand-dollar renovation in 2015. Ironically and incredibly the alteration required the downstairs restroom to be ADA Compliant, but not the path to it.  Patrons are required to climb

down a flight of stairs to access the accessible restroom. The lack of access caused Plaintiffs Jorge Sanchez and Matt Scott significant embarrassment, difficulty, and discomfort on February 18, 2023. While patronizing the Lounge to celebrate a close friend's birthday, both Plaintiffs had to rely on the assistance of Barbarossa Lounge employees to get down the flight of stairs to access the restroom.

2. It should never have been this way. Defendants and/or their predecessors-in-interest performed two extensive interior remodels of subject premises since the ADA was enacted. In 1997-1998, a renovation valued at $250,000 was performed, and in 2015 a second remodel was completed which was valued at $450,000 and included renovation to the bar area, ground floor, basement, and restrooms. Each of these alterations required Defendants to make the restrooms fully accessible, including providing an accessible path of travel to the restrooms, which are currently reachable only by climbing down a flight of stairs. As a result of these and other multiple barriers, disabled Plaintiffs Jorge Sanchez and Matt Scott were unable to meaningfully access and enjoy the Barbarossa Lounge located at 714 Montgomery Street, San Francisco, California.

3. Plaintiffs Jorge Sanchez and Matt Scott are each a "person with a disability" or "physically handicapped person" who requires the use of a wheelchair for locomotion. Each is unable to use portions of public facilities which are not accessible to mobility disabled persons. Plaintiffs were each denied their rights to full and equal access at Barbarossa Lounge. They were denied their civil rights under both California law and federal law, and they continue to have their rights denied, because these facilities were not, and are not now, properly accessible to physically disabled persons, including those who use assistive devices for mobility.

4. Plaintiffs seek injunctive relief to require Defendants to make these facilities accessible to disabled persons and to ensure that any disabled person who attempts to patronize the subject premises will be provided accessible facilities. Plaintiffs also seek recovery of damages for their discriminatory experiences and denial of access and of civil rights, which denial is continuing because of Defendants' failure to provide disabled accessible facilities. Plaintiffs also seek recovery of reasonable statutory attorney fees, litigation expenses and costs, under

1  federal and state law.

2  5. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC
3  section 1331 for violations of the Americans with Disabilities Act of 1990, 42 USC
4  sections 12101 *et seq*. Pursuant to pendant jurisdiction, attendant and related causes of action
5  arising from the same facts are also brought under California law, including but not limited to
6  violations of Health & Safety Code sections 19953-19959; California Civil Code sections 51, 52,
7  54, 54.1, 54.3 and 55; and Title 24 California Code of Regulations, the California State Building
8  Code.

9  6. **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is
10 founded on the fact that the real property which is the subject of this action is located in this
11 district and that Plaintiffs' causes of action arose in this district.

12 7. **INTRADISTRICT:** This case should be assigned to the San Francisco
13 intradistrict as the real property which is the subject of this action is located in this intradistrict
14 and Plaintiffs' causes of action arose in this intradistrict.

15 8. **PARTIES:** Plaintiff Jorge Sanchez a "person with a disability" or "physically
16 handicapped person" who requires the use of a wheelchair or prosthetic for locomotion. He is a
17 His left leg was amputated above the knee due to childhood cancer. On February 18, 2023,
18 Plaintiff Sanchez had his prosthetic leg on, but he was using his manual wheelchair because his
19 prosthetic had caused blistering on his stump which was painful when he put weight on it. He is
20 unable to use portions of public facilities which are not accessible to mobility disabled persons,
21 including those who require the use of a wheelchair. Plaintiff Sanchez is entitled by permit from
22 the State of California to park any vehicle which he drives or is transported in, in a designated and
23 properly configured disabled accessible parking space. Mr. Sanchez is a Paralympic gold medalist
24 for wheelchair basketball after competing at the 2020 Tokyo Paralympic Games and is a member
25 of the Golden State Road Warriors wheelchair basketball team that won the 2022 championship.

26 9. Plaintiff Matt Scott is a "qualified" physically disabled person who must use a
27 wheelchair for ambulation due to spina bifida. He also was part of the 2020
28 gold medalist Paralympic wheelchair basketball team and Golden State Road Warriors

1 championship team.  He is unable to use portions of public facilities which are not accessible to mobility disabled persons, including those who require the use of a wheelchair. Plaintiff Scott has been issued a California state placard for disabled parking which entitles him to park in a properly configured disabled accessible parking space.

10. Defendants NORTH BEACH ALLIANCE, LLC dba BARBAROSSA LOUNGE and SHANNON C. GWIN, are and were the owners, operators, lessors and/or lessees of the subject business, property and buildings at all times relevant to each incident described in this Complaint.  Plaintiffs are informed and believe that each of the Defendants herein is the agent, employee, or representative of each of the other Defendant, and each performed all acts and omissions stated herein within the scope of such agency or employment or representative capacity and is responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of herein.

11. Barbarossa Lounge is a place of "public accommodation" and "business establishment" subject to the requirements of multiple categories of 42 USC section 12181(7) of the Americans with Disabilities Act of 1990; of California Health & Safety Code sections 19953 *et seq.*; of California Civil Code sections 51 *et seq.*; and of California Civil Code sections 54 *et seq*.  On information and belief, the Barbarossa Lounge buildings and its facilities were built after July 1, 1970, and since then have undergone construction and/or "alterations, structural repairs, or additions," subjecting each such facility to disabled access requirements per Health & Safety Code sections 19955-19959 *et seq*., and, as to construction and/or alterations since January 26, 1993, to the disabled access requirements of section 12183 of the Americans with Disabilities Act of 1990.  Such facilities constructed or altered since 1982 are also subject to "Title 24," the California State Architect's Regulations, also known as the California Building Code.  Further, irrespective of the alteration history, such premises are subject to the "readily achievable" barrier removal requirements of Title III of the Americans with Disabilities Act of 1990, as defined by the ADA. 42 USC § 12181(9).

12. **FACTUAL STATEMENT:** Both Plaintiffs play U.S. paralympic wheelchair basketball team and were gold medalists at the 2020 Tokyo games.  Both are also members fo the

Golden State Road Warriors team that took the championship last year. On February 18, 2023, Plaintiff Sanchez and Plaintiff Scott went out with their partners and another teammate and his wife to celebrate his birthday. The three couples met at a vegan restaurant in San Francisco for a celebratory dinner.

13. After they had finished dinner, the group wanted to continue the birthday celebration. They all started looking up bars and cocktail lounges that looked nice for a celebration. The group settled on Barbarossa Lounge. They separated into groups that made sense for an Uber ride. Since there were two people in wheelchairs, they could not all fit in one car.

14. Plaintiff Scott arrived at Barbarossa Lounge with his group first. They saw that there were two lines outside of the Lounge. One long line was for "general admission," and then there was a second line that would allow you to get a table if you were planning to have bottle service. The wait at the line for tables was much shorter, so the group decided to celebrate their friend and teammate's birthday in style with bottle service.

15. Plaintiff Scott, his girlfriend, his teammate, and his wife got in line for a table, and they were greeted at the door and shown to a table. Plaintiff Sanchez and his wife arrived a few minutes later and were also led to the table by the host. Both Plaintiffs found it difficult to get to the table due to how crowded the Lounge was and the lack of a designated accessible path of travel. Their table was a low coffee table height which was surrounded by an L-shaped couch. Neither Plaintiff was able to pull under the table, and they did not want to transfer to the couches because there was no place to stow their wheelchairs. Thus, both Plaintiffs were sitting in the path or travel rather than in seats. This caused them to be bumped around by passersby.

16. The group ordered beverages, including bottle service for the table. They were having a good time celebrating. Eventually, both Plaintiffs needed to use the restroom. Their friend also had to use the restroom, and since he was not using a wheelchair, he went first to scope out where the restroom was. When he returned to the table, he was upset to inform Plaintiffs that the only restroom he could find was down a flight of stairs. Plaintiffs called a server over to their table to ask where the accessible restrooms were located. The server informed

Plaintiffs that the only restrooms were on the lower level.  Plaintiff Sanchez asked if there was an elevator or lift to get down to the lower level.  The server said that there was no elevator or lift to get to the restrooms.  At this point, Plaintiffs were starting to get upset.  They asked the server why the Lounge had served them drinks and charged them for expensive bottle service if they knew there was no restroom for them to use because they were wheelchair users. Both Plaintiffs requested to speak with a manager.

17.   A manager came to speak with Plaintiffs about the issue.  They again explained that they needed to use the restroom and that they understood the only available restroom was down a flight of stairs.  The manager confirmed that the only restrooms at the Lounge were downstairs.  The manager was apologetic, and he told Plaintiffs that he would call around to other restaurants and bars in the area to see if they had an accessible restroom that Plaintiffs could use.

18.   The manager left, apparently to make some calls to other area restaurants, but when he came back, he said the "other restaurants were not options." The manager then offered to have employees of the Barbarossa Lounge assist Plaintiffs down the stairs so that they could use the restroom.  Plaintiff Sanchez explained to the Barbarossa Lounge manager that it was dangerous and embarrassing to have to be carried up and down the stairs just to use the restroom.  He again asked why they were seated and charged for drinks without being informed that there was no way for them to get to the restroom.  The manager did not have a satisfactory response.

19.   By this time, both Plaintiffs had a dire need to use the restroom, so they agreed to have Barbarossa Lounge employees assist them to get down the stairs to use the restroom. If they had not agreed they both would have had bodily functions accidents. Being carried was the lesser of two less than desirable options. Plaintiff Scott was carried down first.  Two Barbarossa Lounge employees picked him using the handles on the sides of his wheelchair while he placed his arms around the employees' shoulders. Plaintiff Scott saw that there were many onlookers with surprised and perplexed looks on their faces.  He felt embarrassed. Both the employees seemed uncomfortable carrying Plaintiff Scott down the stairs in his wheelchair which caused Plaintiff Scott even more anxiety about the dangerous maneuver.  Luckily, Plaintiff Scott did make it down the stairs safely.  He was able to use the restroom while the employees waited for him

outside and then they carried him back up the stairs in the same manner.

20. Plaintiff Sanchez was able to use his prosthetic leg and the assistance of only one of the Barbarossa Lounge employees to get down the stairs. He too, noticed other patrons watching him and felt embarrassed. Plaintiff Sanchez leaned on the railing on one side and an employee on the other side and slowly descended the stairs. It was a painful process for him due to the blisters on his stump, but he did make it down the stairs safely. No one carried his wheelchair down for him, so Plaintiff had to continue to rely on the employee to get him all the way to the restroom, an added embarrassment. Plaintiff Sanchez used the designated accessible restroom, and then the employee assisted him back up the stairs.

21. Going up the stairs after he was finished using the restroom was even more difficult and painful for Plaintiff Sanchez. His prosthetic leg does not have a close fit and his blisters popped and were rubbed raw. He had to stop every few steps to adjust his prosthetic. His prosthetic leg rubbed on an existing blister while he was descending and ascending each stair at Barbarossa Lounge. This caused him pain, and he saw that the blisters had bled when he got home and removed the prosthetic and changed the gauze wrapped on his stump. The incident clearly exacerbated the existing blisters he had. This personal physical injury required several days to heal.

22. After both Plaintiffs have returned from the restroom, the group stayed for a bit longer to enjoy each other's company, but the lack of access to the restrooms at Barbarossa Lounge had put a damper on the celebratory tone of the evening. Both Plaintiffs felt embarrassed by the spectacle that had been created by their needing to use the restroom. They felt like the other patrons at Barbarossa Lounge were staring and talking about them.

23. Ultimately, both Plaintiffs left the celebration feeling embarrassed, sad and frustrated. The group have been planning this celebration for over a month. Their friend and his wife rarely get a babysitter to have time away from their children, and the lack of access at Barbarossa Lounge ruined the evening.

24. The building permit history of Barbarossa Lounge shows that the premises was substantially renovated in 1997-1998, and again in 2015. The restroom itself was altered in 2015,

including apparently adding ADA features to the restrooms. However, despite the renovation costing $450,000 no accessible path of travel to that restroom was provided.

25. The above referenced barriers to access are listed without prejudice to Plaintiffs citing additional barriers to access by an amended complaint after inspection by Plaintiffs' access consultant. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.* 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiffs, and are barriers that each Plaintiff may encounter when he returns to the premises. All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**42 USC §§ 12101** *et seq*

26. Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 25 of this Complaint and incorporate them herein as if separately re-pleaded.

27. In 1990 the United States Congress made findings that laws were needed to more fully protect "some 43,000,000 Americans [with] one or more physical or mental disabilities;" that "historically, society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;" that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous..." 42 U.S.C. §12101

28. Plaintiffs are each a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

29. In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"),

Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

30.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to "a restaurant, bar, or other establishment serving food or drink." 42 USC § 12181(7)(B).

31.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendants set forth herein were in violation of Plaintiffs' rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

32.  The removal of each of the physical barriers complained of by Plaintiffs as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA. As noted hereinabove, removal of each and every one of the architectural and/or policy barriers complained of herein were already required under California law. Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per section 12183 of the ADA. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

33.  The ability to use a restroom is a fundamental necessity of accessing and using a lounge/club which serves food and drinks. Therefore, the benefits of creating an accessible path of travel to the restroom with accessible features does not exceed the costs of readily achievable barrier removal. These costs are fundamental to doing business, like any other essential function of operating a lounge, bar, or restaurant, such as the costs of ensuring fire safety. It is thus readily achievable to remove these barriers.

34.  On information and belief, as of the dates of Plaintiffs' encounters at the premises

and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiffs and to other mobility disabled persons in other respects, which violate Plaintiffs' right to full and equal access and which discriminate against Plaintiffs on the basis of their disabilities, thus wrongfully denying to Plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

35.  Defendants' actions continue to deny Plaintiffs' rights to full and equal access by deterring Plaintiffs from patronizing Barbarossa Lounge and discriminated and continue to discriminate against them on the basis of their disabilities, thus wrongfully denying to Plaintiffs the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

36.  Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.*, Plaintiffs Jorge Sanchez and Matt Scott are entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiffs are being subjected to discrimination on the basis of their disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendants have continued to violate the law and deny the rights of Plaintiffs and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiffs' encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

37.  Plaintiffs seek relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiffs Jorge Sanchez and Matt Scott are each a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he

may use or attempt to use the property and premises, or attempt to patronize Barbarossa Lounge, in light of Defendants' policies and physical premises barriers.

WHEREFORE, Plaintiffs request relief as outlined below.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)**

38. Plaintiffs re-plead and incorporate by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 37 of this Complaint and incorporate them herein as if separately re-pleaded.

39. At all times relevant to this complaint, California Civil Code section 51 has provided that physically disabled persons are free and equal citizens of the state, regardless of medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, *disability, or medical condition* are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Civil Code § 51(b). [Emphasis added.]

40. California Civil Code section 52 provides that the discrimination by Defendants against Plaintiffs on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

41. Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

42. Any violation of the Americans with Disabilities Act of 1990 (as pled in the third cause of action) constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil

Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

43. The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code sections 51 and 52. As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiffs in violation of Civil Code sections 51 and 52, and are responsible for statutory, compensatory and treble damages to Plaintiff, according to proof.

44. **FEES AND COSTS:** As a result of Defendants' acts, omissions and conduct, Plaintiffs have been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiffs' rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiffs therefore seek recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52. Additionally, Plaintiffs' lawsuit is intended to require that Defendants make their facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiffs pray for damages and injunctive relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES IN A PUBLIC ACCOMMODATION**
**(California Health & Safety Code §§ 19955 *et seq*; Civil Code §§ 54 *et seq.*)**

45. Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 44, above, and incorporate them herein by reference as if separately repleaded hereafter.

46. Plaintiffs JORGE SANCHEZ and MATT SCOTT and other similarly situated physically disabled persons, including those who require the use of an assistive device for

13

1  mobility, are unable to use public facilities on a "full and equal" basis unless each such facility is
2  in compliance with the provisions of California Health & Safety Code sections 19953 -19959.
3  Plaintiffs are members of that portion of the public whose rights are protected by the provisions
4  of Health & Safety Code sections 19953 *et seq*.  Further, Plaintiffs are also protected against
5  policy and architectural barrier discrimination by California Civil Code sections 54 and 54.1, the
6  "Disabled Persons Act."  "Individuals with disabilities or medical conditions have the same right
7  as the general public to the full and free use of the streets, highways, sidewalks, walkways, public
8  buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities,
9  and other public places."  Civil Code § 54(a).  Furthermore, "Individuals with disabilities shall be
10 entitled to full and equal access, as other members of the general public, to accommodations,
11 advantages, facilities, . . . places of public accommodation, amusement, or resort, and other places
12 to which the general public is invited."  Civil Code § 54.1(a).  Additionally, any violation of the
13 ADA, including but not limited to any violation of 42 USC sections 12182 and 12183, is also
14 incorporated as a violation of the Disabled Persons Act.  Civil Code §§ 54(c), and 54.1(d).

15        47.     Title 24, California Code of Regulations, formerly known as the California
16 Administrative Code and now also known as the California Building Code, was in effect at the
17 time of each alteration which, on information and belief, occurred at such public facility since
18 January 1, 1982, thus requiring access complying with the specifications of Title 24 whenever
19 each such "alteration, structural repair or addition" was carried out.  On information and belief,
20 Defendants and/or their predecessors in interest carried out new construction and/or alterations,
21 structural repairs, and/or additions to such buildings and facilities during the period Title 24 has
22 been in effect.  Further, Plaintiffs allege, on information and belief, that construction, alterations,
23 structural repairs, and/or additions which triggered access requirements at all relevant portions the
24 Barbarossa Lounge, also occurred between July 1, 1970, and December 31, 1981, and required
25 access pursuant to the A.S.A. (American Standards Association) Regulations then in effect,
26 pursuant to the incorporated provisions of California Government Code sections 4450 *et seq*.
27 Further, on information and belief, additions to the building after the initial construction also
28 occurred after January 1, 1972, triggering access requirements per Health and Safety Code section

19959. Alterations or additions after January 26, 1993, trigger ADA liability and requirements per 42 USC sections 12182 and 12183 of the ADA.

48. **INJUNCTIVE RELIEF:** Plaintiffs seek injunctive relief to prohibit the acts and omissions of Defendants as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiffs and other members of the public who are physically disabled from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiffs in that these actions continue to treat Plaintiffs as inferior and second-class citizen and serve to discriminate against them on the sole basis that they are each a person with disabilities who require the use of a wheelchair or other assistive device for movement in public places.

49. Plaintiffs are deterred from returning to use these facilities, because the lack of access will foreseeably cause them further difficulty, discomfort and embarrassment, and Plaintiffs are unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiffs cannot return to patronize Barbarossa Lounge and its facilities and are deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiffs and other mobility disabled persons. Plaintiffs specifically intend to return and patronize Barbarossa Lounge once it is made accessible, including the path of travel to the restrooms.

50. The acts of Defendants have proximately caused and will continue to cause irreparable injury to Plaintiffs if not enjoined by this Court. Plaintiffs seek injunctive relief as to all inaccessible areas of the premises that each of them has personally encountered, and, as to all areas identified during this litigation by Plaintiffs' access consultant, that they or other physically disabled persons may encounter in the future. *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA)*, *Inc.*, 631 F. 3d 939 (9th Cir. 2011); *Oliver v. Ralphs Grocery* Co., 654 F.3d 903 (9th Cir. 2011). As to the Defendants that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiffs seek preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices and barriers that deny full and equal access for disabled persons, and for reasonable statutory attorney fees, litigation

1  expenses and costs.

2  51. Wherefore Plaintiffs ask this Court to preliminarily and permanently enjoin any
3  continuing refusal by Defendants to grant full and equal access to Plaintiffs in the ways
4  complained of and to require Defendants to comply forthwith with the applicable statutory
5  requirements relating to access for disabled persons.  Such injunctive relief is provided by
6  California Health & Safety Code section 19953 and California Civil Code section 55, and other
7  law.  Plaintiffs further request that the Court award damages pursuant to Civil Code section 54.3
8  and other law and attorney fees, litigation expenses, and costs pursuant to Health & Safety Code
9  section 19953, Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other
10 law, all as hereinafter prayed for.

11 52. **DAMAGES:** As a result of the denial of full and equal access to the described
12 facilities and due to the acts and omissions of Defendants in owning, operating, leasing,
13 constructing, altering, and maintaining the subject facilities, Plaintiffs have suffered a violation of
14 their civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and
15 have suffered difficulty, discomfort and embarrassment, and physical, mental and emotional
16 personal injuries, all to their damages per Civil Code section 54.3, including general and statutory
17 damages, as hereinafter stated.  Defendants' actions and omissions to act constitute discrimination
18 against Plaintiffs on the basis that each of them was and is physically disabled and unable,
19 because of the architectural and other barriers created and/or maintained by the Defendants in
20 violation of the subject laws, to use the public facilities on a full and equal basis as other persons.
21 These violations have deterred Plaintiffs from returning to attempt to patronize Barbarossa
22 Lounge and will continue to cause each of them damages each day these barriers to access
23 continue to be present.  Plaintiffs intend to return to Barbarossa Lounge once the premises has
24 been made accessible for their full and equal enjoyment.

25 53. **FEES AND COSTS:** As a result of Defendants' acts, omissions, and conduct,
26 Plaintiffs have been required to incur attorney fees, litigation expenses, and costs as provided by
27 statute, in order to enforce Plaintiffs' rights and to enforce provisions of the law protecting access
28 for disabled persons and prohibiting discrimination against disabled persons.  Plaintiffs therefore

seek recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55, and California Health & Safety Code section 19953.  Additionally, Plaintiffs' lawsuit is intended to require that Defendants make their facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiffs request relief as outlined below.

## **PRAYER**

Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiffs are granted the relief they request.  Plaintiffs and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiffs JORGE SANCHEZ and MATT SCOTT pray for judgment and the following specific relief against Defendants:

1. Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the subject property and premises to modify the above described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendants to provide facilities usable by Plaintiffs and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies, and to train Defendants' employees and agents in how to recognize disabled persons and accommodate their rights and needs;

2. Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically

1  inaccessible public facilities and policies as complained of herein no longer occur, and cannot
2  recur;
3      3.    Award to Plaintiffs all appropriate damages, including but not limited to statutory
4  damages, general damages, and treble damages in amounts within the jurisdiction of the Court, all
5  according to proof;
6      4.    Award to Plaintiffs all reasonable statutory attorney fees, litigation expenses, and
7  costs of this proceeding as provided by law;
8      5.    Award prejudgment interest pursuant to Civil Code section 3291; and
9      6.    Grant such other and further relief as this Court may deem just and proper.

Date: May 15, 2023                              REIN & CLEFTON

                        */s/ Aaron Clefton*
                      By AARON CLEFTON, Esq.
                      Attorney for Plaintiffs
                      JORGE SANCHEZ and MATT SCOTT

## JURY DEMAND

Plaintiffs hereby demand a trial by jury for all claims for which a jury is permitted.

Date: May 15, 2023                              REIN & CLEFTON

                        */s/ Aaron Clefton*
                      By AARON CLEFTON, Esq.
                      Attorney for Plaintiffs
                      JORGE SANCHEZ and MATT SCOTT

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES