UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE SANCHEZ, et al., Plaintiffs, v. NORTH BEACH ALLIANCE, LLC, et al., Defendants. | Case No. 23-cv-02361-AGT **REPORT AND RECOMMENDATION** Re: Dkt. No. 14 |

Plaintiffs have moved for default judgment. Defendants haven't appeared and consented to magistrate jurisdiction, so the case must be reassigned to a district judge. *See Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017). The undersigned recommends that upon reassignment, the district judge grant plaintiffs' motion in part, denying the motion only as to plaintiffs' request for additional statutory damages for deterrence.

## I. BACKGROUND[1]

Plaintiffs Jorge Sanchez and Matt Scott were teammates on the gold-medal-winning U.S. wheelchair basketball team at the 2020 Tokyo Paralympic Games. In 2023, they celebrated a friend's birthday at Barbarossa Lounge in San Francisco. Wheelchair accessibility

[1] On a motion for default judgment, the moving party's factual allegations are taken as true. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

barriers at the lounge unfortunately soured the evening. *See* Compl. ¶¶ 1–4, 12–13.

To begin with, plaintiffs had trouble getting to their table: the lounge was crowded and there wasn't a designated accessible path of travel. Once at their table, plaintiffs couldn't fit the arms of their wheelchairs underneath the table because the table was too low. *See id.* ¶ 15. Then the biggest frustration came when plaintiffs needed to use the restroom. The only restroom was downstairs, and there was no elevator or lift with access. *See id.* ¶ 16.

The lounge had been renovated in 1997–1998 and 2015, for $250,000 and $425,000 respectively. *See id.* ¶ 2; Dkt. 14-3, Luciani Decl. ¶¶ 3, 6 & Ex. A.[2] The 2015 renovation updated the "bar area, ground floor, basement, and restrooms." Compl. ¶ 2. The restrooms were remodeled in part to add ADA accessibility features, but bafflingly, despite the updates, no accessible path of travel to the restrooms was added. *See id.* ¶ 24.

Barbarossa employees ultimately had to assist plaintiffs down the stairs. They carried Scott in his wheelchair, while Sanchez opted to walk on his prosthetic leg with assistance. *See id.* ¶¶ 19–21. Using the stairs was painful for Sanchez: he had blisters on the stump of his leg and had avoided using his prosthetic for that reason. *See id.* ¶¶ 20–21. Plaintiffs eventually made it to the restroom and back to their table, but the experience was embarrassing, and plaintiffs opted to leave early rather than continue the celebration. *See id.* ¶¶ 22–23.

Several months later, plaintiffs filed a civil action against North Beach Alliance LLC and Shannon Gwin, respectively Barbarossa Lounge's operator and the owner of the real property on which the lounge is located. *See id.* ¶ 10; Dkt. 14-4, O'Donohoe Decl. ¶¶ 2–3 & Exs. D & E; Dkt. 20-1, O'Donohoe Supp. Decl. ¶¶ 2–3 & Exs. I–J. Plaintiffs sued for

[2] Plaintiffs alleged in their complaint that the second renovation cost $450,000. Compl. ¶¶ 2, 24. They made a modest correction in their motion for default judgment, submitting evidence supporting that the second renovation cost $425,000. Luciani Decl. ¶¶ 3, 6 & Ex. A.

violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, the Unruh Civil Rights Act, Cal. Civ. Code §§ 51–52, and the Disabled Persons Act, Cal. Civ. Code §§ 54, 54.1(a).

Plaintiffs served defendants by substitute service. Dkts. 8, 9. After defendants didn't timely respond, the Clerk of the Court entered their default and plaintiffs moved for default judgment. Dkts. 13, 14.

## II. LEGAL STANDARD

Before entering default judgment, a court must confirm that it has jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Part of this inquiry includes evaluating whether service was adequate. "A federal court does not have [personal] jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

If jurisdiction exists, the Court considers the *Eitel* factors in determining whether to enter default judgment. The *Eitel* factors are (1) the possibility of prejudice to the plaintiff if judgment isn't entered, (2) the merits of the plaintiff's claims, (3) the sufficiency of the complaint, (4) the sum of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy in favor of obtaining a decision on the merits. *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (citing *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986)).

If the *Eitel* factors support default judgment, the Court may enter judgment in an amount that is supported by the evidence and that doesn't "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III. DISCUSSION

Plaintiffs have satisfied the requirements for default judgment.

### A. Jurisdiction

The Court has federal-question jurisdiction over plaintiffs' ADA claim, 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiffs' state-law claims, *id.* § 1367(a).

The Court has personal jurisdiction, too. The events giving rise to plaintiffs' claims occurred in the Barbarossa Lounge, the lounge is located in California, and defendants operate the lounge or own the property where the lounge is located. These facts establish the link between defendants and the forum necessary for personal jurisdiction. *See Broad. Music, Inc. v. JMN Rest. Mgmt. Corp.*, No. 14-CV-01190-JD, 2014 WL 5106421, at *1 (N.D. Cal. Oct. 10, 2014) (identifying personal jurisdiction in a similar context, where defendants' restaurant—the site of the challenged conduct—was in California).

Also relevant to personal jurisdiction, plaintiffs served defendants with process. Plaintiffs served defendant North Beach Alliance LLC by serving the company's registered agent, Arash Ghanadan, by substitute service: leaving a copy of the summons and complaint at the agent's listed address (the same address used for Barbarossa Lounge) with the person in charge, and then mailing a copy of the summons and complaint to the same address. *See* Dkt. 9, Proof of Service; Dkt. 22-1, O'Donohoe Second Supp. Decl. ¶¶ 2–3 & Exs. K–L (supporting that Ghanadan is North Beach Alliance LLC's designated agent for service); Fed. R. Civ. P. 4(e)(1), (h)(1)(A) (incorporating state law for serving corporate entities in the United States); Cal. Civ. Proc. Code § 415.20(a) (authorizing substitute service on a company's designated agent by the means used here).

Plaintiffs also served defendant Gwin by substitute service, leaving a copy of the

summons and complaint at Gwin's dwelling or usual place of abode with a person of suitable age and discretion who resided there, and then mailing a copy of the summons and complaint to the same address. *See* Dkt. 8, Proof of Service; Fed. R. Civ. P. 4(e)(2)(B) (permitting substitute service on an individual in the United States by the method used here).[3]

The Court has subject-matter jurisdiction and personal jurisdiction.

**B. *Eitel* Factors**

The *Eitel* factors support default judgment.

1. Merits of the Claims and Sufficiency of the Complaint

Plaintiffs bring claims under the ADA, the Unruh Civil Rights Act, and the Disabled Persons Act. Conduct that violates the ADA also violates the Unruh Civil Rights Act and the Disabled Persons Act. *See* Cal. Civ. Code §§ 51(f), 54(c). To determine, then, if plaintiffs' claims are meritorious, the Court need only consider the ADA claim.

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation. *See* 42 U.S.C. § 12182(a). To prevail on a Title III claim, plaintiffs must show (1) that they are disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that plaintiffs were denied public accommodation by defendants because of their disability. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

For facilities altered after January 26, 1992, the third element is met if the altered areas are not "readily accessible to and useable by individuals with disabilities." 42 U.S.C.

[3] California law allows substitute service on individuals, but only if the individual "cannot with reasonable diligence be personally [served]." Cal. Civ. Proc. Code § 415.20(b). Rule 4(e)(2)(B) doesn't include a diligence requirement, *see TrustLabs, Inc. v. Jaiyong*, No. 21-CV-02606-CRB, 2021 WL 3129595, at *2 n.2 (N.D. Cal. July 23, 2021), and plaintiffs have invoked Rule 4(e)(2)(B) here, *see* Supp. Brief, Dkt. 22 at 2–3.

§ 12183(a)(2); *see also* 28 C.F.R. § 36.402(a) (identifying the January 26, 1992, cutoff date). Altered areas are not readily accessible and useable in this context if they don't comply with the ADA Accessibility Guidelines ("ADAAG"). *See Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011) (citing 28 C.F.R. § 36.406(a)).

Still more, for facilities altered after January 26, 1992, if the alterations "affect usability of or access to an area of the facility containing a primary function," the paths of travel to the altered area, and the bathrooms serving the altered area, must, "to the maximum extent feasible," be "readily accessible to and usable by individuals with disabilities," provided that "such alterations to the path of travel or the bathrooms . . . serving the altered area are not disproportionate to the overall alterations in terms of cost and scope (as determined under criteria established by the Attorney General)." 42 U.S.C. § 12183(a)(2). "Alterations made to provide an accessible path of travel to the altered area will be deemed disproportionate to the overall alteration when the cost exceeds 20% of the cost of the alteration to the primary function area." 28 C.F.R. § 36.403(f)(1).

Plaintiffs' allegations support all three elements of a Title III ADA claim.

First, plaintiffs have physical impairments that substantially limit their ability to walk, Compl. ¶¶ 8–9, rendering them disabled under the ADA, 42 U.S.C. § 12102(1)–(2)(A).

Second, defendants own or operate a place of public accommodation, *i.e.*, a lounge serving drinks. *See* Compl. ¶¶ 10–11; O'Donohoe Decl. ¶¶ 2–3 & Exs. D–E; O'Donohoe Supp. Decl. ¶¶ 2–3 & Exs. I–J; 42 U.S.C. § 12181(7)(B) (defining a place of "public accommodation" as including "a restaurant, bar, or other establishment serving food or drink").

Third, plaintiffs were denied public accommodation because of their disabilities. They struggled to get to their table because there was no accessible path of travel from the

front door to the seating areas; they couldn't fit the arms of their wheelchairs underneath their table because the table was too low, and they had to be carried or assisted downstairs because there was no accessible path of travel to the restroom. *See* Compl. ¶¶ 15–22.

The lounge was altered after January 26, 1992, *id.* ¶¶ 2, 24, so it needed to comply with the ADAAG. *See Moeller*, 816 F. Supp. 2d at 847. It didn't comply. The lack of accessible paths of travel and wheelchair-accessible seating violated the ADAAG. *See* 36 C.F.R. Pt. 1191, App. B § 213.1 ("toilet facilities and bathing facilities shall be provided on a story connected by an accessible route to an accessible entrance"); *id.* § 226.1 (at least 5% of dining surfaces must meet accessible height and clearance standards); App. D § 403.5.1 (paths of travel must meet minimum width requirements).

Furthermore, when defendants renovated the Barbarossa Lounge in 2015, they could have added a restroom on the main floor—eliminating the need to install an elevator or lift to the restroom on the ground floor—for a cost that wouldn't have been "disproportionate to the overall alterations in terms of cost and scope." 42 U.S.C. § 12183(a)(2); *see* Dkt. 14-3, Luciani Decl. ¶¶ 6, 9 (estimating that a unisex restroom could have been installed on the main floor for a cost between 9.4% and 17.6% of the 2015 renovation cost).

Plaintiffs have plausibly alleged an ADA violation. And because conduct that violates the ADA also violates the Unruh Civil Rights Act and the Disabled Persons Act, plaintiffs' claims are all well-pleaded. The complaint's sufficiency supports default judgment.

2. <u>Remaining *Eitel* Factors</u>

On balance, the remaining *Eitel* factors also support default judgment.

First, if default judgment isn't entered, plaintiffs will be prejudiced. Defendants haven't appeared, and plaintiffs have no other means of seeking a remedy.

Second, while the sum of money at stake isn't insignificant, *see* Part III.C, *infra* (explaining that plaintiffs seek $32,384.26 in total), it doesn't outweigh the prejudice that would result if plaintiffs were left without a remedy.

Third, because defendants didn't answer the complaint, there is nothing to suggest a dispute concerning material facts.

Fourth, there is no evidence that defendants' default was due to excusable neglect.

Fifth and finally, although there is a strong policy favoring decisions on the merits, defendants' failure to answer the complaint has made a decision on the merits unfeasible.

The *Eitel* factors weigh in favor of granting plaintiffs' motion for default judgment.

**C. Remedies**

Plaintiffs seek injunctive and monetary relief, with the monetary relief consisting of $16,000 in statutory damages, $13,132 in attorneys' fees, and $3,252.26 in costs, for a total of $32,384.26. *See* Dkt. 14 at 32, 34–35. As explained below, statutory damages should be $8,000, not $16,000. Otherwise, plaintiffs' requested relief is warranted.

1. Injunctive Relief

The ADA permits prevailing plaintiffs to obtain injunctive relief against places of public accommodation that have architectural barriers. *See Molski*, 481 F.3d at 730. In particular, plaintiffs may obtain "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(a)(2).

Plaintiffs seek such an order here. They've asked the Court to order defendants:

(i) to provide "at least 5% accessible seating in the Barbarossa Lounge,"

(ii) to ensure the "tables and chairs at the Barbarossa Lounge are spaced such that there is an accessible path of travel through the interior of the facility," and

(iii) to provide "an accessible path of travel to an accessible restroom in the Barbarossa Lounge," by "install[ing] a wheelchair lift or other means of accessible egress to the current designated accessible restroom or . . . creat[ing] another accessible restroom which is on an accessible path of travel."

Dkt. 14-5 at 2, Proposed Judgment; *see also* Compl. ¶¶ 36, 51.

The proposed injunction is narrowly tailored to the ADA violations alleged in the complaint. The undersigned recommends that the injunction be included in the judgment.

2. <u>Damages</u>

Under the Unruh Civil Rights Act, plaintiffs each seek $8,000 in statutory damages, for a total of $16,000. *See* MDJ, Dkt. 14 at 31. More specifically, each plaintiff requests $4,000 in statutory damages for the night he encountered the accessibility barriers at Barbarossa Lounge, plus $4,000 more for deterrence. *See id.* at 28–29.

Each plaintiff is entitled to $4,000 in statutory damages for the night he encountered the accessibility barriers. On that night, each plaintiff was denied "full and equal access" to the Barbarossa Lounge, Cal. Civ. Code § 55.56(a), when he "personally encountered" accessibility barriers that violated the Unruh Act, *id.* § 55.56(b). "[E]ach particular occasion that [a] plaintiff [is] denied full and equal access" to a place of public accommodation is considered an offense, *id.* § 55.56(f), and the Unruh Act provides for $4,000 in statutory damages "for each and every offense," *id.* § 52(a).

As for an additional $4,000 in statutory damages for each plaintiff for deterrence, that award isn't warranted. If an accessibility barrier "deter[s] [a plaintiff] from accessing a place of public accommodation on a *particular occasion*," then the plaintiff, on that occasion, is denied "full and equal access" to the facility, *id.* § 55.56(b), (d) (emphasis added),

and may recover $4,000 in statutory damages, *id.* §§ 52(a); 55.56(a)–(b), (d).

But here, plaintiffs haven't identified a particular occasion when they were deterred from accessing the Barbarossa Lounge. They allege only generally that the accessibility barriers they encountered at the lounge have "deterred [them] from returning." Compl. ¶¶ 49, 52; *see also* Dkt. 14-1, Sanchez Decl. ¶ 10 (stating generally, "I wish to return to the Barbarossa Lounge once the premises have been made accessible to persons with disabilities"); Dkt. 14-2, Scott Decl. ¶ 10 (same).

General allegations of deterrence aren't enough to merit an additional $4,000 award. *See Johnson v. Patel*, 2015 WL 5560257, at *4 (E.D. Cal. Sept. 21, 2015) (reasoning that to obtain statutory damages for deterrence under the Unruh Act, "[a]t a minimum, the statute suggests that the plaintiff must identify a particular occasion on which the plaintiff was reasonably dissuaded from visiting the facility due to his actual knowledge of the violation"); *cf. Johnson v. Bourbon Props., LLC*, 2017 WL 1549952, at *1–2 (E.D. Cal. May 1, 2017) (awarding $4,000 in statutory damages for deterrence when the plaintiff, after visiting defendants' store and discovering that the store didn't have wheelchair-accessible parking, "attempted to return on three other occasions, but was again deterred from patronizing the store"); *Salinas v. Pac. Castle Newport I, LLC*, 2015 WL 13685030, at *3 (C.D. Cal. Aug. 31, 2015) (similarly awarding $4,000 for deterrence when the plaintiff's declaration established "that he was deterred from visiting the Restaurant because of the noncompliant counter on at least two occasions: in August 2014 and again in January 2015").

The undersigned recommends that each plaintiff be awarded $4,000 in statutory damages ($8,000 in total), based on the occasion when plaintiffs went to the Barbarossa Lounge and encountered accessibility barriers there. Plaintiffs' request for additional, deterrence

awards should be denied because plaintiffs haven't identified "a particular occasion" when they were deterred from returning to the lounge. Cal. Civ. Code § 55.56(b), (d).

3. Attorneys' Fees

The ADA permits prevailing plaintiffs to recover reasonable attorneys' fees. 42 U.S.C. § 12205. Here, plaintiffs seek to recover $13,132 in fees, based on 53.60 hours of work performed by paralegal Emily O'Donohoe, whose billable rate was $245. *See* Dkt. 14-4, O'Donohoe Decl. ¶¶ 4, 10, 12 & Ex. F. An attorney also worked on the case, dkt. 20-2, Clefton Decl. ¶ 9, but waived his fees "[i]n the interest of billing judgment," dkt. 14 at 33.

O'Donohoe is an experienced and capable paralegal. She has a law degree, is a member of the Illinois State Bar, and has worked as a paralegal for ten years. *See* O'Donohoe Decl. ¶¶ 5–6. Current and former colleagues rave about her work. *See* Dkt. 14-4, Ex. H, McGuinness Decl. ¶¶ 16–17 ("While Ms. O'Donohoe worked for me I relied on the excellent quality of her research and writing skills . . . . [H]er work needed less instruction on the front end and less revision on the back end than most paralegals I have supervised. [Her] work output was equal to an associate attorney's work . . . ."); *id.*, Ex. G, Atwood Decl. ¶ 10 ("I have found that Ms. O'Donohoe's work ethic and intellect is equal to the best people I have worked with over the course of my 40-year career."); Clefton Decl. ¶ 5 ("Ms. O'Donohoe can perform a great majority of attorney tasks with minimal supervision.").

Given her skill and experience, O'Donohoe's $245 hourly rate was reasonable. *Cf. Meta Platforms, Inc. v. Soc. Data Trading Ltd.*, No. 21-CV-09807-AGT (CRB), 2022 WL 18806267, at *5 (N.D. Cal. Nov. 15, 2022) (finding $275 to be a reasonable hourly rate for a skilled and experienced paralegal), *adopted*, 2022 WL 18806265 (N.D. Cal. Dec. 8, 2022). O'Donohoe also billed a reasonable number of hours (53.60 hours) in the case. Her billing

records don't show signs of overbilling. *See* Dkt. 14-4, Ex. F.

The judgment should include the requested award of $13,132 in attorneys' fees.

4. Costs

The ADA permits prevailing plaintiffs to recover reasonable litigation costs. 42 U.S.C. § 12205. The litigation costs incurred in this case totaled $3,252.26. *See* Clefton Decl. ¶ 10. This total consisted of a $402 filing fee, $345 in service costs, $130.26 in investigation costs, and $2,375 in fees for plaintiffs' expert general contractor, who estimated how much it would cost to create an accessible path of travel to an accessible restroom at the Barbarossa Lounge. *See id.*, Ex. C; Luciani Decl. ¶¶ 5, 8–9. All of these costs, including the expert's fees, were reasonably incurred. *Cf. Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002) (holding that "litigation expenses" under 42 U.S.C. § 12205 include "expert witness fees"). The judgment should include plaintiffs' litigation costs.

## IV. CONCLUSION

The Clerk of the Court shall reassign this case to a district judge. Upon reassignment, the undersigned recommends that the district judge grant in part plaintiffs' motion for default judgment, denying the motion only as to the request for statutory damages for deterrence.

The undersigned recommends that the district judge enter judgment for plaintiffs on all claims; award $8,000 in statutory damages ($4,000 for each plaintiff), $13,132 in attorneys' fees, and $3,252.26 in costs; and enter the proposed permanent injunction. *See* Proposed Judgment, Dkt. 14-5 at 2.

By October 25, 2024, plaintiffs must serve defendants with a copy of this report, by any means reasonably calculated to provide actual notice, and file proof of service. Any party may object to this report within 14 days of being served with a copy. *See* 28 U.S.C.

§ 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).

**IT IS SO ORDERED.**

Dated: October 22, 2024

Alex G. Tse
United States Magistrate Judge