UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE SANCHEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH BEACH ALLIANCE, LLC, et al.,<br><br>Defendants. | Case No. 23-cv-02361-EMC<br><br>**ORDER RE SUPPLEMENTAL BRIEFING**<br><br>Docket Nos. 14, 23 |

    Currently pending before the Court is a report and recommendation ("R&R") on Plaintiffs' motion for default judgment. Having reviewed the R&R and related documents, the Court hereby orders Plaintiffs to file supplemental briefing on the issues identified below. The supplemental briefing (which may include evidence) shall be filed within a week of the date of this order.

A.    <u>Service of Process</u>

    1.    <u>North Beach Alliance</u>

    For North Beach Alliance, Plaintiffs have provided evidence that they served the summons on Arash Ghanadan, "AGENT FOR SERVICE," by leaving a copy of the summons with "DAVID 'DOE' (REFUSED TO GIVE LAST NAME) – PERSON IN CHARGE" at 714 Montgomery Street, San Francisco, which is the location of the Lounge. Docket No. 9 (proof of service). After inquiry from Judge Tse, Plaintiffs provided evidence that Arash Ghanadan is North Beach Alliance's agent for service. The evidence consists of documents from the California of Secretary of State which reflect that North Beach Alliance is a company in good standing and list Arash Ghanadan as the company's agent. *See* Docket No. 22-1 (O'Donahoe Decl., Exs. K-L) (business search results from the California Secretary of State)).

1   Although this evidence indicates that Arash Ghanadan is North Beach's agent, the Court
2   has concern about service of process because the California Secretary of State documents reflect
3   that Arash Ghanadan's address is: 1 Bluxome Street, Apartment 304, San Francisco.  The process
4   server did not serve Arash Ghanadan at that address but rather served Arash Ghanadan at the
5   address for the Lounge (*i.e.*, 714 Montgomery Street, California).  The proof of service reflects
6   that, initially, the process server tried to serve Arash Ghanadan at the Bluxome Street address – on
7   four different occasions between May 24, 2023, and June 1, 2023.  *See* Docket No. 9 (proof of
8   service).  Presumably because service could not be effected there, the process server then tried to
9   serve on two occasions at the Lounge address before leaving a copy of the summons with David
10  Doe at the Lounge on June 22, 2023.  *See* Docket No. 9 (proof of service).

11  Is there authority allowing for a company's agent for service of process to be served at an
12  address that is not the agent's address?  Is service on the agent at the address of the company
13  proper?

14  2.     Mr. Gwin

15  For Mr. Gwin, Plaintiffs have provided evidence that they served the summons by leaving
16  a copy of the summons with "LAURIE GRISSON – PERSON IN CHARGE" at 712 Montgomery
17  Street, San Francisco" (right next door to the Lounge) and then mailing a copy to the same
18  address.  *See* Docket No. 8 (proof of service).  After inquiry by Judge Tse (who asked about
19  whether there was reasonable diligence to effect personal service before resorting to substitute
20  service), Plaintiffs stated that they were not relying on substitute service under California law.
21  Instead, Plaintiffs invoked Federal Rule of Civil Procedure 4(e)(2)(B), *see* Docket No. 22 (Supp.
22  Br. at 1-2), which allows service on an individual by "leaving a copy of each at the individual's
23  dwelling or usual place of abode with someone of suitable age and discretion who resides there."
24  Fed. R. Civ. P. 4(e)(2)(B).

25  What evidence is there that 712 Montgomery is Mr. Gwin's dwelling or usual place of
26  abode?  Notably, the process server described Laurie Grisson as a "PERSON IN CHARGE"
27  which suggests that 712 Montgomery is not a dwelling or usual place of abode.  Furthermore, the
28  O'Donahoe Declaration attached to the motion for default judgment has an exhibit (Exhibit D) that

2

characterizes 712 Montgomery Street as a "COMMERCIAL" property type – although it also notes "MULTIPLE USES" for land use. *See* Docket No. 14-4 (O'Donohoe Decl., Ex. D) (Real Property Tax Assessor Record).

### 3. Re-Serving Summons and Complaint

If there is any issue with service, the Court will allow Plaintiffs the opportunity to re-serve the summons and complaint.

## B. Injunctive Relief

### 1. Accessible Seating

Included among Plaintiffs' requests for injunctive relief is a request that the Court order Defendants to provide 5% accessible seating in the Lounge. *See* 36 C.F.R. Part 1191, App. B, § 226.1 ("Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902."); *id.*, App. D, § 902.3 ("The tops of dining surfaces and work surfaces shall be 28 inches (710 mm) minimum and 34 inches (865 mm) maximum above the finish floor or ground."). Although the complaint does mention problems with accessibility in seating for where Plaintiffs were seated on the day at issue, *see* Compl. ¶ 15 (alleging that Ps' "table was a low coffee table height which was surrounded by an L-shaped couch" and "[n]either Plaintiff was able to pull under the table, and they did not want to transfer to the couches because there was no place to stow their wheelchairs"), it does not provide any information about the lack of accessibility at other tables in the Lounge. What evidence is there that the Lounge does not provide 5% accessible seating?

### 2. Accessible Path of Travel to Accessible Bathroom

Plaintiffs also seek as injunctive relief an accessible path of travel to an accessible bathroom in the Lounge. In the R&R, Judge Tse indicated that this relief was appropriate because, "when defendants renovated the . . . Lounge in 2015, they could have added a restroom on the main floor – eliminating the need to install an elevator or lift to the restroom on the ground floor – for a cost that wouldn't have been 'disproportionate to the overall alterations in terms of cost and scope.'" R&R at 7 (quoting 42 U.S.C. § 12183(a)(2) and citing Luciani Decl. ¶¶ 6, 9); *see also* 28 C.F.R. § 36.403(f)(1) (providing that "[a]lterations made to provide an accessible path of travel to

3

the altered area will be deemed disproportionate to the overall alteration when the cost exceeds 20% of the cost of the alteration to the primary function area"). What evidence, other than the Luciani Declaration, indicates that alterations sought would not have been disproportionate? Can Mr. Luciani also supplement his declaration to explain how a new restroom could be accomplished and completed on the main floor for a price of between $40,000 and $75,000 (*e.g.*, is space available on the main floor, is there anything to suggest configuration on the main floor would not be possible or would be difficult)?

**IT IS SO ORDERED**.

Dated: November 18, 2024

_____
EDWARD M. CHEN
United States District Judge